UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:20cv81775 , Civil, Judge _____

**Sunbelt Rentals, Inc.**,

Plaintiff,

v.

**Midas Companies**, an implied partnership,
**Midas Utilities, LLC**
    **f/k/a Midas Utilities, Inc.**,
**Midas SouthEast, LLC**
    **f/k/a T.V. Diversified, LLC**,
**Midas Midwest, LLC**, and
**The Guarantee Company of North America USA**,

Defendants.

## COMPLAINT

Plaintiff, Sunbelt Rentals, Inc. ("Sunbelt") files this Complaint against Midas Companies; Midas Utilities, LLC f/k/a Midas Utilities, Inc. ("Midas Utilities"); Midas SouthEast, LLC f/k/a T.V. Diversified, LLC ("Midas SouthEast"); Midas Midwest, LLC ("Midas Midwest"); and The Guarantee Company of North America USA ("The Guarantee").

### PARTIES

1.      Plaintiff Sunbelt is a corporation formed under the laws of North Carolina. Its principal place of business is in South Carolina.

2.      Upon information and belief, Defendant Midas Companies is an implied partnership consisting of Midas Utilities, Midas SouthEast, and Midas Midwest. These three

limited liability companies hold themselves out as a singular business entity known as Midas Companies, but Midas Companies is neither incorporated nor organized as a limited liability company in Maryland, Florida, Indiana, Delaware, or any other state.

3.      Defendant Midas Utilities was previously a corporation known as Midas Utilities, Inc., formed under the laws of Maryland. Upon information and belief, its principal place of business was in Maryland.

4.      Upon information and belief, in May 2017, Midas Utilities, Inc., converted to Midas Utilities, LLC, a Maryland limited liability company. Upon information and belief, none of its members are resident citizens of North Carolina or South Carolina. It can be served through its registered agent, CSC-Lawyers Incorporating Service Company, at 7 St. Paul Street, Suite 820, Baltimore, Maryland 21202.

5.      Following the conversion to a limited liability company, Midas Utilities remains liable for all the debts and obligations of the corporation, and Midas Utilities, Inc., and Midas Utilities, LLC, are deemed to be the same entity. *See* Md. Code Ann., Corps. & Ass'ns § 3-904.

6.      Defendant Midas SouthEast is a limited liability company organized under the laws of Florida. Upon information and belief, none of its members are resident citizens of North Carolina or South Carolina. It can be served through its registered agent, Corporation Service Company, at 1201 Hays Street, Tallahassee, Florida 32301.

7.      Upon information and belief, Midas SouthEast was previously known as TV Diversified, LLC, a Florida limited liability company.

8.      Midas SouthEast transacted business with Sunbelt as TV Diversified, LLC. Upon information and belief, none of TV Diversified, LLC's members are or were resident citizens of North Carolina or South Carolina.

9.      Defendant Midas Midwest is a limited liability company organized under the laws of Indiana. Upon information and belief, none of its members are resident citizens of North Carolina or South Carolina. It can be served through its registered agent, Corporation Service Company, at 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

10.     Defendant The Guarantee is a corporation formed under the laws of Michigan and duly authorized to transact business in Florida. Its principal place of business is in Michigan. It can be served through its Florida registered agent, its Chief Financial Officer, at 200 E. Gaines Street, Tallahassee, Florida 32399.

## JURISDICTION

11.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

## VENUE

12.     Venue is proper in this Court because "a substantial part of the events or omissions giving rise to the claim occurred" within this federal district. 28 U.S.C. § 1391(b)(2).

13.     Venue is also proper in this Court because Midas Utilities consented to "legal action in whatever jurisdiction Sunbelt deems necessary" in the Application for Credit & Rental Agreement (the "Credit Application," attached as Exhibit 1).

## FACTS

14.     Sunbelt rents equipment to its customers for use primarily in construction projects across the country.

15.     As set forth below, upon information and belief, the Midas Companies is an implied partnership consisting of Midas Utilities, Midas SouthEast, and Midas Midwest. Throughout 2019 and 2020, Sunbelt rented equipment to the Midas Companies for use by its partners on various projects.

### MIDAS UTILITIES

16.     Midas Utilities is a contractor specializing in trenchless and traditional underground infrastructure services.

17.     Midas Utilities had an open account with Sunbelt through which Midas Utilities could rent equipment for use on various construction projects from Sunbelt on credit.

18.     During 2019 and 2020, Sunbelt rented certain equipment to Midas Utilities for use on various construction projects in Virginia, Maryland, and Florida.

19.     Despite use of the equipment on such projects, Midas Utilities did not fully pay Sunbelt the rental charges for the equipment.

20.     Midas Utilities agreed to Sunbelt's Terms and Conditions (the "Rental Contract," attached as Exhibit 2).

21.     The Rental Contract was incorporated into the Credit Application and Sunbelt's invoices.

22.     Midas Utilities also agreed to the terms of the Rental Contract when it accepted each piece of equipment.

23.     Unpaid invoices (the "Midas Utilities Invoices") reflecting the equipment Midas Utilities rented from Sunbelt and the associated outstanding rental fees are attached as collective Exhibit 3.

24.     An account summary that includes the amounts of all of the Midas Utilities Invoices is attached as Exhibit 4.

25.     Exhibit 4 reflects that as of May 13, 2020, the total unpaid principal amount of the Midas Utilities Invoices is $79,147.90 (the "Midas Utilities Principal Amount").

MIDAS SOUTHEAST

26.     Midas SouthEast is another contractor entity associated with the Midas Companies.

27.     Midas SouthEast had an open account with Sunbelt through which Midas SouthEast could rent equipment from Sunbelt on credit.

28.     During 2019 and 2020, Sunbelt rented certain equipment to Midas SouthEast for use on various construction projects in Florida.

29.     Midas SouthEast did not fully pay Sunbelt the rental charges for the equipment.

30.     Midas SouthEast agreed to the Rental Contract.

31.     The Rental Contract was incorporated into Sunbelt's invoices.

32.     Midas SouthEast also agreed to the terms of the Rental Contract when it accepted each piece of equipment.

33.     Unpaid invoices (the "Midas SouthEast Invoices") reflecting the equipment Midas SouthEast rented from Sunbelt and the associated rental fees (not including the unpaid invoices and rental fees alleged below relating to the LS 53 Project) are attached as collective Exhibit 5.

34.     An account summary that includes the amounts of all of the Midas SouthEast Invoices is attached as Exhibit 6.

35.     Exhibit 6 reflects that as of April 30, 2020, the total unpaid principal amount of the Midas SouthEast Invoices is $52,372.00 (the "Midas SouthEast Principal Amount").

MIDAS COMPANIES

36.     Midas Companies is an implied partnership consisting of Midas Utilities, Midas SouthEast, and Midas Midwest.

37.     Midas Companies held itself out to Sunbelt as being jointly and severally liable among its partners.

38.     The Contact page of the Midas Companies' website, www.midascompanies.com/contact, indicates that Midas Companies has three offices: a "Corporate office" (matching Midas Utilities's principal place of business), a "Southeast office" (matching Midas SouthEast's principal place of business), and a "Midwest office" (matching Midas Midwest's principal place of business).

39.     Both Midas Utilities and Midas SouthEast requested that Sunbelt send invoices to email addresses associated with Midas Companies and using the domain, midascompanies.com

40.     Both Midas Utilities and Midas SouthEast communicated with Sunbelt regarding equipment rentals through Midas Companies email addresses.

41.     Midas Utilities, Midas SouthEast, and Midas Midwest hold themselves out as a singular business under the name Midas Companies. *See Myers v. Aragona*, 318 A.2d 263 (Md. Ct. Spec. App. 1974) (holding that the use of a firm name estops a party from denying the existence of a partnership); *accord Virginia-Carolina Chem. Co. v. Fisher*, 50 So. 504, 506 (Fla. 1909) (holding that defendants holding themselves out as a business creates a partnership); *Beck v. Ind. Surveying Co.*, 429 N.E.2d 264, 268 (Ind. Ct. App. 1981) ("The use of a firm name is evidence of the existence of a partnership.").

42.     Upon information and belief, Midas Utilities, Midas SouthEast, and Midas Midwest share in the profits of Midas Companies.

43.     Midas Companies is neither incorporated nor organized as a limited liability company under the laws of Maryland, Florida, Indiana, Delaware, or any other state.

44.     Midas Companies is an implied partnership of Midas Utilities, Midas SouthEast, and Midas Midwest.

45.     As a partnership, the partners of Midas Companies are jointly and severally liable for the debts of the partnership.

46.     By communicating through the same email address regarding the equipment rentals and accounts, directing Sunbelt to send all invoices to it, and holding itself out as a singular business entity, Midas Companies assumed all the debts and liabilities of Midas Utilities and Midas SouthEast.

47.     Both the Credit Application and the Rental Contract provide for a service charge that accrues at a rate of 1.5% per month on the balance of delinquent invoices until the invoices are fully paid. *See* Exhibit 1 ¶ 2; Exhibit 2 § 12.

WEST PALM BEACH PROJECT

48.     Sunbelt rented equipment to Midas SouthEast for use on the Lift Station No. 53 Improvements project (the "LS 53 Project") for the City of West Palm Beach, Florida, contract number 17-18-118.

49.     On December 4, 2018, The Guarantee, as surety, issued a Public Construction Bond, number 30164580, (the "Bond") in connection with Midas SouthEast's work, guaranteeing that Midas SouthEast, as principal, would perform the work and promptly make payment for all labor provided and material used in the performance of the work on the LS 53 Project. A copy of the Bond is attached as Exhibit 7.

50.     The Bond states that Midas SouthEast, as principal, and The Guarantee, as surety, agreed to be jointly and severally liable to any claimant who has not been paid in full. (*See* Ex. 7, ¶ 2).

51.     Midas SouthEast defaulted on its obligations and prematurely left the LS 53 Project. Additionally, Midas SouthEast has not paid Sunbelt for use of the rented equipment.

52.     Following Midas SouthEast leaving the project, Sunbelt was directed to send the invoices directly to the City of West Palm Beach.

53.     Unpaid invoices (the "LS 53 Invoices") reflecting the equipment rented for the LS 53 Project from Sunbelt and the unpaid associated rental fees are attached as collective Exhibit 8.

54.     The equipment is still being used on the jobsite, but the invoices have still not been paid and Sunbelt's damages are still increasing.

55.     Sunbelt attempted to mitigate its damages by expressing an intent to remove its rental equipment from the jobsite, but The Guarantee objected and threatened legal action on July 6, 2020, if Sunbelt removed its equipment. A copy of the correspondence is attached Exhibit 9.

56.     Sunbelt made a partial claim on the Bond, but The Guarantee denied the vast majority of the claim, arguing that The Guarantee is not liable for any costs incurred after Midas

SouthEast left the LS 53 Project and offering only $3,031.72. A copy of the correspondence is attached as Exhibit 10.

57.    An account summary that includes the amounts of all of the LS 53 Invoices is attached as Exhibit 11.

58.    Exhibit 11 reflects that as of August 11, 2020, the total unpaid amount of the LS 53 Project, which is covered by the Bond, is $142,561.03 (the "LS 53 Principal Amount").

59.    The LS 53 Principal Amount is still increasing.

## COUNT 1 – BREACH OF CONTRACT AS TO MIDAS UTILITIES

60.    Sunbelt incorporates the previous allegations presented in this Complaint.

61.    The Credit Application, Rental Contract, and Midas Utilities Invoices constitute the contract between Sunbelt and Midas Utilities.

62.    Under the terms of the contract, Midas Utilities agreed to pay Sunbelt for rental of the equipment.

63.    Midas Utilities breached that contract by not fully paying Sunbelt for its rental of the Equipment.

64.    Sunbelt suffered damages because of Midas Utilities's breach of contract.

## COUNT 2 – BREACH OF CONTRACT AS TO MIDAS SOUTHEAST

65.    Sunbelt incorporates the previous allegations presented in this Complaint.

66.    The Rental Contract and Midas SouthEast Invoices constitute the contract between Sunbelt and Midas SouthEast.

67.    Under the terms of the contract, Midas SouthEast agreed to pay Sunbelt for rental of the equipment.

68.    Midas SouthEast breached that contract by not fully paying Sunbelt for its rental of the equipment.

69.    Sunbelt suffered damages because of Midas SouthEast's breach of contract.

## COUNT 3 – UNJUST ENRICHMENT

70.     Sunbelt incorporates the previous allegations presented in this Complaint.

71.     Sunbelt rented the equipment to Midas Utilities and Midas SouthEast with the reasonable expectation that they would pay to Sunbelt the rental charges for the Equipment.

72.     Midas Utilities and Midas SouthEast accepted and used the Equipment and knew that Sunbelt expected to be paid the rental charges for the Equipment.

73.     Midas Utilities and Midas SouthEast did not fully pay to Sunbelt the rental charges for the Equipment and it would be inequitable for Midas Utilities and Midas SouthEast to retain the benefit of such equipment without paying for the same.

74.     Accordingly, Midas Utilities, Midas SouthEast, and Midas Midwest are liable to Sunbelt for the value of such benefit, under the theory of unjust enrichment.

## COUNT 4 – BREACH OF OBLIGATIONS UNDER THE BOND

75.     Sunbelt incorporates the previous allegations presented in this Complaint.

76.     Sunbelt rented equipment to Midas SouthEast to be used on the LS 53 Project.

77.     Sunbelt has not been paid for the use of the rental equipment since Midas SouthEast left the LS 53 Project.

78.     Despite Sunbelt's attempts to mitigate its damages by recovering its equipment, The Guarantee directed Sunbelt not to remove the rental equipment from the LS 53 Project.

79.     Sunbelt made a proper claim on the Bond for charges associated with the unpaid rental equipment.

80.     The Guarantee subsequently denied the vast majority of Sunbelt's claim on the Bond.

81.     By failing and refusing to discharge its bond obligations, The Guarantee has breached its obligations under the Bond.

82.     As a direct and proximate result of The Guarantee's breach of its bond obligations, Sunbelt has incurred damages in an amount not less than $142,561.03, and this figure is continually increasing.

### COUNT 5 – UNJUST ENRICHMENT AS TO THE GUARANTEE

83.     Sunbelt incorporates the previous allegations presented in this Complaint.

84.     The Guarantee accepted and used Sunbelt's rental equipment on the LS 53 Project in furtherance of The Guarantee's obligations to the City of West Palm Beach under the Bond.

85.     The Guarantee threatened Sunbelt with legal action if Sunbelt removed the rental equipment from the LS 53 Project.

86.     The Guarantee has not paid for the equipment, and it would be inequitable for The Guarantee to retain the benefit of such equipment without paying for the same.

87.     Accordingly, The Guarantee is liable to Sunbelt for the value of such benefit, under the theory of unjust enrichment.

### DEMAND FOR RELIEF

Accordingly, Sunbelt respectfully requests that the Court enter a judgment in Sunbelt's favor and against Defendants granting the following relief:

i.     making Midas Utilities, Midas SouthEast, and Midas Midwest jointly and severally liable to Sunbelt as implied partners for the following:

– the Midas Utilities Principal Amount ($79,147.90),

– the Midas SouthEast Principal Amount ($53,372.00),

– service charges that have accrued and that will continue to accrue until the Midas Utilities Principal Amount is fully paid,

– service charges that have accrued and that will continue to accrue until the Midas SouthEast Principal Amount is fully paid,

– all other damages Sunbelt has suffered,

– Sunbelt's reasonable and necessary attorneys' fees and costs,

– prejudgment interest,

– post-judgment interest,

– any other relief that the Court deems appropriate, and

ii.    making all Defendants jointly and severally liable to Sunbelt for the following:

– the LS 53 Principal Amount ($142,561.03),

– service charges that have accrued and that will continue to accrue until the LS 53 Principal Amount is fully paid,

– all other damages Sunbelt has suffered,

– Sunbelt's reasonable and necessary attorneys' fees and costs,

– prejudgment interest,

– post-judgment interest, and

– any other relief that the Court deems appropriate.

Respectfully submitted this 30th day of September, 2020.

**BUTLER SNOW LLP**

By: /s/M. Elizabeth Roper
    M. ELIZABETH ROPER (FL Bar No. 0100795)
    1020 Highland Colony Pkwy, Suite 1400 (39157)
    Post Office Box 6010
    Ridgeland, Mississippi 39158-6010
    (T) 601-948-5711
    (F) 601-948-4500
    (e) beth.roper@butlersnow.com